IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN J. RAFTER,

    *Plaintiff*,

    v.

THE GREAT ATLANTIC & PACIFIC
TEA COMPANY, INC.,

    *Defendant*.

Civil Action No. ELH-12-3580

## MEMORANDUM OPINION

John J. Rafter, plaintiff, filed suit against his former employer, The Great Atlantic &
Pacific Tea Company ("A&P"), defendant, claiming that A&P terminated his employment on the
basis of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29
U.S.C. § 621, and the Maryland Discrimination in Employment Statute ("MDES"), Md. Code
(2009 Repl. Vol., 2012 Supp.), State Gov't § 20-601, *et seq*.[1] See Complaint (ECF 1). A&P filed
a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Motion,"
ECF 4), and a supporting memorandum ("Memo," ECF 6-1), asserting that plaintiff's suit is
foreclosed by A&P's Chapter 11 bankruptcy proceedings in the United States Bankruptcy Court
for the Southern District of New York (the "Bankruptcy Court").

In particular, A&P argues that Rafter's claim has been "discharged" under 11 U.S.C. §
1141(d) as a result of the Bankruptcy Court's confirmation of A&P's Chapter 11 plan for
reorganization. In support of the Motion, defendant attached documents from A&P's bankruptcy
proceeding. *See* ECF 4-2, 4-3, 4-4, 4-5, 4-6, 4-7. Plaintiff opposed the Motion ("Opposition" or
"Opp.," ECF 11-2), and submitted several exhibits that he believes support denial of the Motion

---

[1] This Court has subject matter jurisdiction over plaintiff's ADEA claim, *see* 28 U.S.C. §
1331, and supplemental jurisdiction over plaintiff's state law claim. *See* 28 U.S.C. § 1367(b).

based on estoppel. *See* ECF 11-3, 11-4, 11-5, 11-6, 11-7, 11-8, 11-9.[2] A&P replied ("Reply," ECF 12).

The Motion has been fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I will grant the Motion.

## Factual Background

A. <u>Plaintiff's Employment With A&P</u>

In 1988, A&P hired Rafter as a Co-Manager for one of its supermarkets operating under A&P's "SuperFresh" banner name.[3] Compl. ¶ 9. Rafter was quickly promoted to the position of Manager and, in December 2010, he became the Manager of the SuperFresh grocery store in Towson, Maryland (the "SuperFresh"). *Id.* ¶ 13.

At about 3:00 p.m. on February 25, 2011, while Rafter was working his regular shift, the SuperFresh lost power. *Id.* ¶ 16. Rafter notified Bill Snyder, the District Manager, of the power outage. *Id.* At approximately 4:30 or 4:45 p.m., the SuperFresh regained power. *Id.* Rafter informed Snyder that the power was back on and left work at 5:15, after his shift had ended. *Id.*

Rafter's Co-Manager, Denise Gentry, remained at the SuperFresh, where she "was expected to assume all responsibilities in [plaintiff's] absence." *Id.* ¶ 18. At about 8:00 or 8:30 p.m. that evening, Gentry contacted Rafter at home and advised him that the store had again lost

---

[2] In his Opposition, plaintiff provided a summary of settlement negotiations with A&P to bolster his contention that A&P is estopped from asserting that plaintiff's claims were discharged in the bankruptcy proceeding. *See* Opp. at 1-4. "'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Mylan Laboratories, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). However, as discussed, *infra,* I will assume the truth of plaintiff's summary in order to consider plaintiff's estoppel argument.

[3] According to the Complaint, A&P is a Maryland corporation which trades and does business under several banner names, including SuperFresh, Pathmark, and The Food Emporium. Compl. ¶ 6.

power and that she was waiting for the power company to arrive. *Id.* ¶ 17. Rafter subsequently learned that "Gentry left the store approximately two hours later at 10:30 p.m. even though the power was still off and she notified no one other than two part-time, night employees that she was leaving." *Id.* ¶ 19.

When Rafter returned to the SuperFresh at 7:00 a.m. the next morning, the power was still off. *Id.* ¶ 21. He contacted Snyder, who also came to the SuperFresh. *Id.* Although "a generator was ordered, . . . the power was restored by approximately 8:00 p.m.," before the generator could be installed. *Id.* As a result of the extended power outage, the SuperFresh sustained a "loss." *Id.* ¶ 22.

On March 28, 2011, a month after the incident, Rafter met with Snyder and Ed Travers, a member of A&P's human resources department. *Id.* ¶¶ 23-24. They informed Rafter that he was terminated from his position with A&P, effectively immediately, "for negligence and loss." *Id*. ¶ 23. Rafter, who had worked for A&P for more than 22 years, was "crushed." *Id*. ¶ 24. Shortly after the meeting, Snyder asked Rafter his age, and then added that Rafter did not have to respond. *Id.* Rafter replied that he was 57 years old. *Id.* The Complaint does not indicate whether Gentry, who was in her "late 30's-early 40's," *id.* ¶ 14, received any discipline as a result of the power outage.

According to plaintiff, "A&P replaced Rafter with a substantially younger female." *Id.* ¶ 25. Rafter also alleges that a younger manager of another SuperFresh store "was not fired for causing A&P a significantly greater loss and engaging in clearly negligent conduct," relating to a "problem with rats" that caused the store to close for a full day. *Id.* ¶ 28. Additionally, plaintiff alleges that a female Co-Manager at his store, approximately thirty years his junior, had given a

pay advance to a part time employee without approval, but was "issued a write-up in lieu of termination." *Id.* ¶ 29.

Plaintiff's exhibits to the Opposition show that his counsel wrote to the Chief Executive Officer of A&P on May 5, 2011, setting forth the allegations of age discrimination, ECF 11-3, and A&P responded on June 13, 2011. ECF 11-4. A&P denied wrongdoing. It also indicated that it was selling or closing its stores in the Baltimore area on July 9, 2011, and in the interest of avoiding litigation, A&P offered plaintiff the "separation package he would have been offered if he was still employed as a store manager on July 9." *Id.*[4]

B. A&P's Bankruptcy Proceedings[5]

On December 12, 2010, *i.e.*, before Rafter was terminated from his employment, A&P and certain related entities, as debtors and debtors in possession (collectively, the "Debtors"), filed in the United States Bankruptcy Court for the Southern District of New York voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, which were jointly administered. *See In re The Great Atlantic & Pacific Tea Company, Inc., et al.*, No. 10-24549 (RDD) (Bankr. S.D.N.Y. 2012).

---

[4] The "separation package" included a payment of $18,000 to plaintiff, which was allegedly comparable to what plaintiff would have received had he still been employed by A&P when it closed its Baltimore stores in July 2011. *See* Opp. Exh. 2 (ECF 11-4). The other exhibits include plaintiff's charge of age discrimination filed with the EEOC on July 27, 2011, *see* Opp. Exh. 3 (ECF 11-5); an EEOC "Agreement to Mediate" signed on December 8, 2011, by counsel for both parties, *see* Opp. Exh. 4 (ECF 11-6); a letter to the EEOC from counsel for A&P dated April 16, 2012, denying plaintiff's charge of discrimination, *see* Opp. Exh. 5 (ECF 11-7); a "Dismissal and Notice of Rights" issued to Rafter by the EEOC, dated September 12, 2012, *see* Opp. Exh. 6 (ECF 11-8); and the "LinkedIn" profile of Christopher Getaz, Esq., Senior Counsel and Director of Labor Law at A&P. *See* Opp. Exh. 7 (ECF 11-9).

[5] Plaintiff makes no mention of A&P's bankruptcy proceedings in his Complaint. However, they are subject to judicial notice, as discussed, *infra*.

On February 17, 2012, *i.e.*, after Rafter was fired, the Debtors filed a "First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code" (the "Plan"). *See* Motion Exh. B (ECF 4-3). The Plan stated in Article VIII, titled "**EFFECT OF CONFIRMATION OF THE PLAN**," Paragraph A, captioned "<u>**DISCHARGE OF CLAIMS AND TERMINATION OF INTERESTS**</u>," as follows, *id.* at 57 (emphasis in original):

> **EXCEPT AS OTHERWISE PROVIDED IN THE PLAN AND EFFECTIVE AS OF THE EFFECTIVE DATE: (1) THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION, DISCHARGE, AND RELEASE OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON SUCH CLAIMS FROM AND AFTER THE COMMENCEMENT DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS, PROPERTY, OR ESTATES; (2) THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS, NOTWITHSTANDING WHETHER ANY SUCH HOLDERS FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN, VOTED TO ACCEPT THE PLAN OR VOTED TO REJECT THE PLAN; (3) ALL CLAIMS AND INTERESTS SHALL BE SATISFIED, DISCHARGED, AND RELEASED IN FULL, AND THE DEBTORS' LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE; AND (4) ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS, THE DEBTORS' ESTATES, THE REORGANIZED DEBTORS, THEIR SUCCESSORS AND ASSIGNS, AND THEIR ASSETS AND PROPERTIES ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS, OR ANY ACT OR OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED PRIOR TO THE EFFECTIVE DATE.**

On February 28, 2012, the Bankruptcy Court issued "Findings Of Fact, Conclusions Of Law, And Order Confirming The Debtors' Joint Plan Of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code" ("Confirmation Order"), confirming the Plan. *See*

Motion Exh. A (ECF 4-2).  As to "**Discharge of Debtors**," the Confirmation Order stated in

Paragraph 127:

> Pursuant to Article VIII.A of the Plan and section 1141(d) of the Bankruptcy Code, except as otherwise provided in the Plan and effective as of the Effective Date [March 13, 2012]: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever . . . against the Debtors or any of their assets, property, or Estates; the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders were entitled to vote, failed to vote on the Plan, voted to accept the Plan, voted to reject the Plan or were deemed to have accepted or rejected the Plan; all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

With respect to "**Injunctions and Automatic Stay**," the Confirmation Order stated in

Paragraph 181: "This Confirmation Order shall permanently enjoin the commencement or

prosecution by any Person, whether directly, derivatively, or otherwise, of any Claims, Interests,

Causes of Action, obligations, suits, judgments, damages, demands, debts, right, or liabilities

released, exculpated or enjoined pursuant to the Plan."

A&P issued a "Notice of Entry Of Confirmation Order And Occurrence Of Effective

Date Of The Debtors' . . . Plan Of Reorganization . . ." (the "Notice") on March 13, 2012, which

was the Plan's "Effective Date."  *See* Motion Exh. C (ECF 4-4).  The Notice advised that the

Bankruptcy Court had confirmed the Plan on February 28, 2012.  Notice ¶ 1.  Additionally, it

included a statement pertaining to "Discharge of Debtors" that was identical to Paragraph 127 of

Confirmation Order, *supra*. *See id.* ¶ 3. Paragraph 5, titled "**Bar Date for Administrative Claims**," stated (emphasis in original):

> Unless otherwise provided by the Plan, the Confirmation Order, any other applicable order of the Bankruptcy Court, or otherwise agreed-to by the parties, all requests for payment of an Administrative Claim that accrued on or before the Effective Date [of March 13, 2012] must be filed with the Bankruptcy Court and served by holders of such Claims, together with accompanying documentation, with the Bankruptcy Court and served on the Debtors **no later than April 12, 2012** (the "***Administrative Claims Bar Date***"). Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims that do not file and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors . . . and such Administrative Claims shall be discharged as of the Effective Date.

The Notice also contained contact information for those persons who had any questions. *Id*. at 5.

It is undisputed that Rafter received the Notice, which was sent to him via First Class Mail on or about March 14, 2012. *See* Motion Exh. D at 4 (ECF 4-5) ("Affidavit of Service" filed in Bankruptcy Court, listing Rafter as recipient of Notice). In plaintiff's Opposition, he concedes, Opp. at 4 (emphasis in original): "March 14, 2012 – Notice of the confirmation of Defendant's Chapter 11 plan is sent to thousands of Defendant's potential creditors, including []Rafter. Included in that notice is a deadline of April 12, 2012 for all administrative claims to be filed."

Rafter did not file his employment discrimination claim with the Bankruptcy Court. Instead, on July 27, 2011, Rafter filed a charge of age discrimination with the Equal Opportunity Employment Commission ("EEOC"). Compl. ¶ 3; *see* Opp. Exh. 3 (ECF 11-5) (plaintiff's charge of discrimination). Thereafter, on December 8, 2011, plaintiff and A&P attended a mediation conducted by the EEOC, pursuant to a mediation agreement of that date. *See* Opp. at

2; ECF 11-6. No resolution was reached, however. Thereafter, A&P wrote to the EEOC on April 16, 2012, denying wrongdoing and claiming that plaintiff's conduct resulted in an inventory loss to A&P of almost $27,000 at cost and over $47,000 at retail. *See* ECF 11-7. On September 12, 2012, the EEOC issued Rafter a "Dismissal and Notice of Rights," providing Rafter notice of his right to sue within ninety days. Opp. Exh. 6 (ECF 11-8). Rafter filed this suit on December 6, 2012.

## Standard of Review

A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008); *see Aschroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).

Whether a complaint adequately states a claim for relief is judged by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Twombly*, 550 U.S. at 555. Rule 8(a)(2) provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although the plaintiff need not include "detailed factual allegations," the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555. To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at

556 (brackets in original) (internal quotation marks omitted). A complaint is insufficient if it provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555.

Notably, the court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). However, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009). And, if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citation omitted).

In resolving a motion under Rule 12(b)(6), a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). But, under Fed. R. Civ. P. 12(d), a district court has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Wright & Miller, Fed. Prac. & Pro. § 1366, at 159 (3d ed. 2004, 2011 Supp.); *see Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Generally, if a court considers material outside of the pleadings, "the motion must be treated as one for summary judgment under Rule 56," in which case "[a]ll parties

must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

However, there are limited exceptions to the court's ability to consider extraneous documents in the context of a motion to dismiss. For instance, the court may properly consider documents "attached to the complaint, as well those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted). Additionally, facts and documents subject to judicial notice may be considered by a court, without converting the motion under Rule 12(d). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir.), *cert. denied*, ___ U.S. ___, 132 S. Ct. 115 (2011).

Although plaintiff's Complaint makes no mention of the details of A&P's bankruptcy proceeding, this Court may take judicial notice of the records of the Bankruptcy Court. *See Anderson v. FDIC*, 918 F.2d 1139, 1141 (4th Cir. 1990) ("[T]he Bankruptcy Court is considered 'a unit of the district court' under 28 U.S.C. § 151, and we believe a district court should properly take judicial notice of its own records."); *accord In re Modanlo*, 342 B.R. 238, 241 n.7 (D. Md. 2006). ("This Court is entitled to take judicial notice of the records of the bankruptcy court."). Therefore, I may consider the Plan; the Confirmation Order; the Notice; and "Affidavit of Service" listing Rafter as recipient of the Notice, all of which are attached as exhibits to A&P's Motion, because they are records of the Bankruptcy Court. *See, e.g.*, *Crider v. Pilgrim's Pride Corp.*, No. 5:09cv00058, 2011 WL 6090121, at *5 (W.D. Va. 2011) (Urbanski, J.) (taking judicial notice of bankruptcy court documents pertinent to defendants' assertion that plaintiff's

employment discrimination claims had been discharged upon confirmation of defendant's Chapter 11 plan). The authenticity of these documents is not disputed by plaintiff.

In his Opposition, plaintiff has acknowledged the Court's authority to convert the motion to dismiss to a motion for summary judgment. *See* Opp. at 1. In anticipation of that possibility, he filed various exhibits pertaining to his estoppel argument for consideration by the Court, and did not ask for additional discovery. *See id.* at 1-2.

Without converting the motion, I may consider Rafter's EEOC charge and right to sue letter as documents subject to judicial notice. *See e.g.*, *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565 (2d Cir. 2006) ("[I]t is proper for this court to consider the plaintiff's relevant filings with the EEOC . . . none of which were attached to the complaint, because the . . . plaintiffs rely on these documents to satisfy the ADEA time limit requirements."); *Muhammad v. N.Y. City Transit Auth.*, 450 F. Supp. 2d 198, 204 (E.D.N.Y. 2006) (finding that an EEOC charge of discrimination and determination could be properly considered on a motion to dismiss because "plaintiff's EEOC charge and the agency's determination are both public records, of which this Court may take judicial notice"). Plaintiff's remaining exhibits, *see* n.4, are extrinsic to the pleadings. Nevertheless, I have assumed the truth of plaintiff's discussion of the parties' settlement negotiations, for which his exhibits provide support, as if they were part of the complaint, in order to address his estoppel claim. Although I have not converted the Motion to one for summary judgment, I would reach the same result even if I were to do so.

### Discussion

A&P argues that, "[u]nder the clear terms of the Bankruptcy Code and the Confirmation Order, Plaintiff's claims against Defendant have been discharged, and thus fail as a matter of

law." Memo at 6. In particular, A&P contends that, under 11 U.S.C. § 1141(d), Rafter's claims were automatically discharged upon confirmation of the Plan. *Id.* at 7.

In his Opposition to the Motion, plaintiff avers that, until February 2013, he and his counsel engaged in settlement discussions with A&P, Opp. at 2-4, yet counsel for A&P never mentioned the Plan, the Confirmation Order, the Notice, or the claims filing deadline at any point during lengthy settlement discussions. *Id.* at 2-3. Therefore, based on principles of estoppel, plaintiff argues that his discrimination claim was not subject to discharge in bankruptcy.

"The 'principal purpose' of bankruptcy is straightforward: 'to grant a fresh start to the honest but unfortunate debtor.'" *Bosiger*, 510 F.3d at 448 (quoting *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007)). The Chapter 11 "reorganization process allows a debtor, burdened with 'the weight of oppressive indebtedness,' to restructure its financial obligations, discharge its pre-existing debt, and emerge from bankruptcy with a new capital structure that better reflects financial reality." *Bosiger*, 510 F.3d at 448 (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)).

In *Bosiger*, the Fourth Circuit explained, 510 F.3d at 448-49 (some internal citations omitted):

> Several provisions of the Federal Rules of Bankruptcy Procedure and the Bankruptcy Code work in unison to ensure that debtors receive a "fresh start" after emerging from bankruptcy. First, Bankruptcy Rule 3003(c) requires that "claimants against an estate in bankruptcy . . . file timely proofs of claim in order to participate in a reorganization." Failure to bring forward such a claim— defined broadly as any "right to payment," *see* 11 U.S.C. § 101(5)(A)—before the claims bar date established by the bankruptcy court forfeits a claimant's right to participate in a bankruptcy reorganization. *See* Fed. R. Bankr. P. 3003(c)(3). Second, the Bankruptcy Code specifically states that a bankruptcy court's confirmation of a restructuring plan discharges "the debtor from any debt that arose before" the confirmation of the plan. 11 U.S.C. § 1141(d)(1)(A). Third, the Bankruptcy Code further insulates a debtor from his pre-bankruptcy obligations

by stating that the discharge of debts "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2).

A&P relies on 11 U.S.C. § 1141(d), which was incorporated by reference into Paragraph 127 of the Confirmation Order, *supra*. Titled "Effect of Confirmation," § 1141(d) states, in part, with exceptions not relevant here:

> (d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
>
> (A) discharges the debtor from any debt that arose before the date of such confirmation, . . . whether or not—
>
> > (i)   a proof of the claim based on such debt is filed . . . ;
> >
> > (ii)  such claim is allowed . . . ; or
> >
> > (iii) the holder of such claim has accepted the plan . . . .

The Bankruptcy Code defines "debt" as the "liability on a claim." 11 U.S.C. § 101(12). A "claim," in turn, is defined in pertinent part as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 101(5)(A). In *Grady v. A.H. Robins Co.*, 839 F.2d 198 (4th Cir. 1988), the Fourth Circuit explained:

> Congress intended that the definition of claim in the Code be as broad as possible, noting that "the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy. It permits the broadest possible relief in the bankruptcy court."

*Id.* at 200 (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 309 (1977), S. Rep. No. 989, 95th Cong., 2d Sess. 21-22 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787 at 5807-8 & 6266).

Of import here, employment discrimination claims qualify as "debts" subject to discharge under 11 U.S.C. § 1141(d) if they arose prior to confirmation of the debtor's plan. *See, e.g.*, *Holcombe v. U.S. Airways, Inc.*, 369 F. App'x 424, 427-29 (4th Cir. 2010) (per curiam) (affirming dismissal of plaintiff's employment discrimination claims which arose after debtor filed for bankruptcy but before confirmation of reorganization plan because plaintiff "had a claim by [the confirmation date] and, therefore, her claim was properly discharged to the extent it was in existence on that date"); *Crider*, *supra*, 2011 WL 6090121, at *4-5 (finding that a plaintiff's "employment discrimination claims clearly fall within the definition of 'claim'" and were subject to discharge because the discriminatory conduct took place prior to confirmation); *Holmes v. Air Line Pilots Ass'n, Int'l*, 745 F. Supp. 2d 176, 197 (E.D.N.Y. 2010) (finding employment discrimination claims that arose before confirmation order "barred, discharged, terminated, and joined by . . . the Confirmation Order and Plan and the injunction provisions set forth in sections 1141(d) and 524(a) of the Bankruptcy Code"); *Kresmery v. Serv. Am. Corp.*, 227 B.R. 10, 13 (D. Conn. 1998) ("Under the plain language of . . . Section 1141(d) of the bankruptcy code and the confirmed plan, the defendant's liability for employment discrimination against plaintiff based on its pre-confirmation [conduct] has been discharged.").

For bankruptcy purposes, a claim "arises" upon the occurrence of the "predicate acts" giving rise to liability. *Holcombe*, 369 F. App'x at 428 (holding that employment discrimination claim arose at time of employer's alleged discriminatory conduct); *see Grady*, 839 F.2d at 203 (holding that women who had been implanted with the debtor's defective contraceptive device prior to the company's chapter 11 filing but who had not suffered any injury until after the petition was filed had a "claim" subject to automatic stay because "the tortious conduct occurred

prior to the filing of the petition"); *accord O'Loghlin v. Cnty. of Orange*, 229 F.3d 871, 874 (9th Cir. 2000) ("[A] claim arises, for purposes of discharge in bankruptcy, at the time of the events giving rise to the claim, not at the time the plaintiff is first able to file suit on the claim."). In other words, "there need not be an immediate right to payment" for a claim to arise. *Holcombe*, 369 F. App'x at 428; *see Grady*, 839 F.2d at 203.

Rafter was terminated on March 28, 2011, approximately one year before the Plan was confirmed. But, he argues that his claims did not arise until September 2012, when he received notice of his right to sue from the EEOC, which was after the Administrative Claims Bar Date of April 12, 2012. *See* Opp. at 6. However, exhaustion of administrative remedies for an employment discrimination claim "is a procedural requirement and does not give rise to the claim." *Holcombe*, 369 F. App'x at 428; *accord McSherry v. Trans World Airlines, Inc.*, 81 F.3d 739, 741 (8th Cir. 1996) ("[U]nder Title VII the right to sue letter is merely a jurisdictional prerequisite, and does not create a claim."); *Kresmery*, 227 B.R. at 13 (stating that the definition of "claim" includes "an obligation for which a civil action would be premature due to statutory prerequisites such as the right to sue letter"). Therefore, it is "immaterial" that Rafter did not receive notice from the EEOC until after the Plan was confirmed. *Holcombe*, 369 F. App'x at 428; *see also McSherry*, 81 F.3d at 740-41 (affirming the dismissal of an ADA claim arising postpetition but preconfirmation as discharged by employer's bankruptcy, despite plaintiff's lack of "right to sue letter," because "[w]hile lack of a right to sue letter may have left [employee's] claim unmatured or contingent on that date, § 105(A) specifically includes such claims within its definition"). Thus, plaintiff's claims of employment discrimination under the ADEA and MDES

arose prior to confirmation, and were subject to discharge under 11 U.S.C. § 1141(d) and the Confirmation Order.

Citing *Williams v. Kmart Corp.*, 304 F. Supp. 2d 1309 (M.D. Ala. 2004), Rafter also argues that 28 U.S.C. § 959(a) exempts his claim from discharge under 11 U.S.C. § 1141(d). Section 959(a) states:

> Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

Rafter's reliance on *Williams* is misplaced. Like Rafter, the plaintiff in *Williams* lodged an employment discrimination claim based on conduct that occurred after the defendant had filed for bankruptcy, and did not file his complaint until after confirmation of the plan of reorganization. *See* 304 F. Supp. 2d at 1311. Initially, the court denied the defendant's motion for summary judgment on the basis of discharge under 11 U.S.C. § 1141(d), reasoning that "[t]he plain language of § 959(a) seems to allow for the filing of the complaint" because "[t]he claims asserted . . . are employment claims stemming from the conduct of the Defendant's business." *See id.* at 1312-13. However, upon the defendant's motion for reconsideration, the court reversed course, concluding: "Under the plain language of 11 U.S.C. § 1141(d), the Plaintiff's claim was discharged upon confirmation of the reorganization plan, and there is no exception in § 1141 which would cover this pending employment discrimination lawsuit." *Williams v. Kmart Corp.*, Civ. No. 03-A-239-N, slip op. at 3 (M.D. Ala. June 14, 2004) (located at ECF 34 of

*Williams* docket).  Thus, even under *Williams*, Rafter's discrimination claim against A&P should be dismissed.

The Supreme Court discussed the limited exceptions to 11 U.S.C. § 1141(d) in *F.C.C. v. Nextwave Personal Communications, Inc.*, 537 U.S. 293 (2003):

> A preconfirmation debt is dischargeable unless it falls within an express exception to discharge.  Subsection 1141(d) of the Bankruptcy Code states that, except as otherwise provided therein, the "confirmation of a plan [of reorganization] . . . discharges the debtor from *any debt* that arose before the date of such confirmation," 11 U.S.C. § 1141(d)(1)(A) (emphasis added), and *the only debts it excepts from that prescription are those described in § 523*.

*Id.* at 303 (some internal citations omitted, second emphasis added).  Section 523 identifies certain categories of claims for which a plan's confirmation "does not discharge an individual debtor."  However, 28 U.S.C. § 959(a) is not included in 11 U.S.C. § 523 as an "express exception to discharge."  *Nextwave*, 537 U.S. at 840.[6]  Therefore, plaintiff may not invoke 28 U.S.C. § 959(a) as an applicable exception.

To be sure, "[a] pre-existing debt can be discharged through bankruptcy only if the creditor was on notice of a debtor's bankruptcy filing and the claims bar date."  *Bosiger*, 510 F.3d at 451.  Additionally, "if the 'name[ ], interest[ ], and address[ ]' of a creditor is known, actual written notice is required."  *Id.* (quoting *City of New York v. New York, N. H. & H. R. Co.*, 344 U.S. 293, 296 (1953)) (alterations in *Bosiger*).  However, Rafter does not dispute that he received the Notice from the Debtors, advising him of the Bankruptcy Court's confirmation of the Plan and the deadline to file claims with the Bankruptcy Court.  Indeed, he had received notice of the Debtors' bankruptcy filing, along with a "proof of claim" form, as early as May 9, 2011, less than two months after being fired.  *See* Motion Exh. E (ECF 4-6) ("Affidavit of

---

[6] Moreover, Rafter does not rely on any of the exceptions set forth in 11 U.S.C. § 523. Therefore, I need not address them here.

Service" filed with Bankruptcy Court, listing Rafter as recipient of May 9, 2011 "Notice of Deadline Requiring Submission of Proofs of Claim" and "Proof of Claim Form").

Under Fourth Circuit precedent, the Notice is facially adequate, and Rafter does not contend otherwise. *See Bosiger*, 510 F.3d at 452 (holding that two letters notifying employee of "the entry of the order confirming the second Plan of Reorganization, the effective date of the Plan of Reorganization, and the bar date for filing certain administrative and rejection damage claims" were "sufficient to establish that [employee] received actual notice"); *see also Crider*, 2011 WL 6090121, at *4-5 (finding that debtor's notice, served on plaintiff by mail, "is sufficient to establish that plaintiff received actual notice of defendant's bankruptcy filing, the requirement that she file a proof of claim, the effect of failing to file a proof of claim, and the General Bar Date"). Nor does Rafter dispute that his claims qualify as "administrative claims," subject to the filing deadline of the Administrative Claims Bar Date.[7]

Instead, Rafter argues that "this Court should permit [plaintiff's] claim to proceed because Defendant's actions reasonably induced [plaintiff] and his counsel to believe that Defendant did not intend to seek dismissal of [plaintiff's] claim due to the bankruptcy proceeding." Opp. at 6. In his view, "fairness and equity mandate that [plaintiff] should be permitted to proceed with his age discrimination claim." *Id.* Rafter offers no legal authority to

---

[7] In *In re Zilog, Inc.*, 450 F.3d 996 (9th Cir. 2006), the Ninth Circuit explained that, under Supreme Court precedent, "discrimination claims that arise post-petition but pre-confirmation can be filed as administrative expenses against the debtor's estate." *Id.* at 999 (citing *Reading v. Brown*, 391 U.S. 471 (1968)); *see Boeing N. Am., Inc. v. Ybarra*, 424 F.3d 1018, 1025 (9th Cir. 2005) ("In the interests of 'fairness to all persons having claims against the insolvent,' the [*Reading*] Court held that tort claims arising post-petition [are] 'actual and necessary expenses' of preserving the estate.") (citation omitted); *see also Sanchez v. Nw. Airlines, Inc.*, 659 F.3d 671, 678-79 (8th Cir. 2011) (assuming, but not deciding, that employee's ADA claims against employer-debtor qualify as "administrative expenses for the purposes of discharge," and constitute a liability incurred in the "ordinary course of business").

support this position.  *See id.* ("[C]ounsel appreciates that he does not have a litany of cases to support his position . . . .").

Plaintiff's argument sounds in estoppel.  Even assuming the truth of plaintiff's representation of the parties' settlement discussions, estoppel does not apply.

In *Dawkins v. Witt*, 318 F.3d 606, 611 n.6 (4th Cir. 2003) (citations omitted), the Fourth Circuit described "the four traditional requirements for estoppel":

> "(1) [T]he party to be estopped knew the true facts; (2) the party to be estopped intended for his conduct to be acted upon or acted in such a way that the party asserting estoppel had a right to believe that it was intended; (3) the party claiming estoppel was ignorant of the true facts; and (4) the misconduct was relied upon to the detriment of the parties seeking estoppel."

The Restatement (Second) of Torts § 894 (1997) is also instructive.  With respect to "equitable estoppel as an affirmative defense," it states, in part:

> (1) If one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does an act . . . , the first person is not entitled . . . (b) to regain property or its value that the other acquired by the act, if the other in reliance upon the misrepresentation and before discovery of the truth has so changed his position that it would be unjust to deprive him of that which he thus acquired

Notably, the Fourth Circuit has entertained estoppel as a basis to preclude a defendant from asserting the statute of limitations as an affirmative defense.  *See City of Bedford v. James Leffel & Co.*, 558 F.2d 216, 217-18 (4th Cir. 1977) (allowing plaintiff to assert estoppel against defendant's affirmative defense of statute of limitations, because defendant's conduct and representations in response to threat of litigation allegedly delayed plaintiff's initiation of suit); *see also Martinez v. Hartford Cas. Ins. Co.*, 429 F. Supp. 2d 52, 57 (D.D.C. 2006) (discussing assertion of estoppel to "preclude a party from asserting [a limitations period] as an affirmative

defense") (alterations in original); *Black v. Lexington Sch. Dist. No. 2*, 488 S.E.2d 327, 331-32 (S.C. 1997) (same).

However, courts have generally agreed that "settlement negotiations or statements expressing interest in settlement are insufficient to give rise to a claim that a defendant is equitably estopped from asserting" a defense. *Black*, 488 S.E.2d at 331; *accord Grabert v. Lightfoot*, 571 So. 2d 293 (Ala. 1990) (finding that engaging in settlement negotiations does not estop party from asserting limitations as a defense, absent some affirmative inducement to the claimant to delay bringing action); *Howe v. Groover*, 464 S.E.2d 240, 242 (Ga. 1995) (finding no waiver of right to assert limitations, where there was no evidence that defendant's insurer did anything "other than merely negotiate, to lull the plaintiff into believing she would be paid without having to file her suit within the statute of limitation"); *Viirre v. Zayre Stores, Inc.*, 571 N.E.2d 209 (Ill. 1991) (finding that mere pendency of negotiations conducted in good faith insufficient to estop defendant from relying on statute of limitations as a defense); *Bennett v. Metro-North Commuter R.R.*, 231 A.D.2d 662 (N.Y. App. Div. 1996) ("The mere fact that settlement negotiations have been ongoing between parties is insufficient to estop a party from asserting the Statute of Limitations as a defense.").

Plaintiff has not identified any representations by A&P prior to the filing deadline in which A&P suggested that Rafter's claims would not be discharged by confirmation of the Debtors' Plan. Rather, plaintiff merely asserts that the parties engaged in settlement negotiations, most of which occurred *after* the April 12, 2012 filing deadline. Therefore, these discussions could not have had any bearing on plaintiff's decision to forego filing his claim with the Bankruptcy Court. *See* Opp. at 3-4. Moreover, plaintiff's exhibits establish that, prior to the

filing deadline, A&P's conduct consisted solely of offering a severance payment to plaintiff on June 13, 2011, and participating in EEOC mediation on December 8, 2011. Both actions took place several months before confirmation of the Plan on February 28, 2012, or dissemination of the Notice on March 13, 2012, and A&P repeatedly denied liability. Plaintiff's exhibits demonstrate that, at the time A&P offered Rafter a severance payment and participated in EEOC mediation, A&P's counsel could not have known the result of the confirmation process, which had yet to occur. And, there is nothing in A&P's conduct in 2011 (i.e., offering a severance package or agreeing to mediation) that induced plaintiff not to file a claim in the bankruptcy proceeding by the Bar date of April 12, 2012.

Nor does plaintiff dispute that he received notice of the time and place to file his claim. In other words, he knew "the true facts." *Dawkins*, 318 F.3d at 611 n.6. Therefore, any reliance on A&P's failure to mention the bankruptcy proceeding prior to the claims filing deadline is patently unreasonable. Although plaintiff's counsel complains that he did not receive these notices directly, nothing prevented plaintiff from discussing them with his counsel.

Simply put, A&P's conduct prior to the claim deadline does not support Rafter's invocation of estoppel. To conclude otherwise would permit a creditor to circumvent the finality of the Chapter 11 confirmation through willful blindness, with substantial costs on the reorganization process. In *Bosiger*, the Fourth Circuit said, 510 F.3d at 449-50:

> [A]llowing individual creditors to opt out of a formal bankruptcy proceeding in order to bring a subsequent civil lawsuit against a debtor only serves to make bankruptcy proceedings more complex and more costly. Such an outcome directly contradicts the Supreme Court's teaching that the prompt and efficient administration and settlement of a debtor's estate is a principal goal of bankruptcy law. *Katchen v. Landy*, 382 U.S. 323, 328 (1966).

More importantly, unwinding the finality of bankruptcy upsets not only the expectations of the creditors who actually do participate in the bankruptcy proceedings, but also the reliance interests of the creditors who have advanced funds based on the new capital structure laid out in the reorganization plan. *See In re U.S. Airways Group, Inc.*, 369 F.3d 806, 810 (4th Cir. 2004). This upsetting of reliance interests could ultimately reduce the incentives for anyone to participate in the bankruptcy process. If individual, pre-existing creditors were able to avoid the diminution of their assets inherent in the bankruptcy process by pursuing a separate legal claim, there would be no incentive for anyone to participate in a corporate reorganization. Likewise, lenders would be much less likely to extend financing to debtors faced with uncertain liabilities on pre-petition claims not discharged through their bankruptcy. . . . It is thus no exaggeration to say that the very functioning of the bankruptcy system is dependent on its finality.

I note, in passing, that Rafter's counsel pledged to "file a motion in the U.S. Bankruptcy Court for the Southern District of New York seeking permission to file a late administrative claim" on the basis of "excusable neglect." Opp. at 8. I decline to comment on plaintiff's hypothetical motion before another court.

In sum, I agree with A&P that Rafter is barred from bringing this discrimination suit. The Plan was properly confirmed and, under § 1141(d)(1)(A) of the Bankruptcy Code, the confirmation discharged A&P of any "debt that arose before the date of such confirmation." As a result, the "Confirmation Order . . . permanently enjoin[ed] the commencement or prosecution" of suit on Rafter's discrimination claims, which accrued in March 2011. *See* Confirmation Order ¶ 181.

## Conclusion

For the forgoing reasons, I will grant A&P's Motion to Dismiss, without prejudice to plaintiff's right, if any, to seek leave to file a belated administrative claim in Bankruptcy Court. An Order follows.

Date: August 15, 2013                    _____/s/_____
                                         Ellen Lipton Hollander
                                         United States District Judge